GLENN E. SMITH
GLENN E. SMITH & ASSOC.
216 Longs Peak Dr.
Cheyenne, WY 82009
(307) 635-4912

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| **MICHAEL G. LEE,** a Wyoming resident, | ) ) ) | |
| Plaintiff, | ) ) | |
| **vs.** | ) ) | Civil No. 11-CV-0067-J |
| **LIFE INSURANCE COMPANY OF NORTH AMERICA**, a Pennsylvania Corporation, | ) ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

The Plaintiff in this action, Michael G. Lee, by and through his attorney of record, Glenn E. Smith, respectfully moves the Court for an Order Granting his Motion for Attorney's Fees pursuant to Fed.R.Civ.P. 54(d)(2) and U.S.D.C.L.R. 54.3(c). Accompanying this motion is Plaintiff's Statement of Consultation, submitted in compliance with Local Rule 54.3(a), Plaintiff's itemized billing statement and supporting affidavit, submitted in compliance with Local Rule 54.3(c), and Plaintiff's memorandum brief included within Plaintiff's Motion for Attorney's Fees.

1.    The statutory authority underlying Plaintiff's request for an award of fees appears in 29 U.S.C. 1132(g)(1) of the Employers Retirement and Income Security Act of 1974 ("ERISA").   Under this statute, a court "in its discretion may allow a reasonable attorney's fee and costs of action to either party."

2.    In *Gordon v. United States Steel Corp.,* 724 F.2d 106, 109 (1983), the Tenth Circuit set forth the following five factors to be considered where a party seeks attorney's fees in an ERISA case: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties positions.[1]  See also *Graham v. Hartford Life and Accident Ins. Co.,* 501 F.3d 1153 (10th Cir. 2007).

3.    The five *Gordon* factors are merely guidelines.  *McGee v. Equicor-Equitable HCA Corp.,* 953 F.2d 1192 (10th Cir. 1992).  They are non-exclusive in their application. *Id*.  Courts are not required to consider each factor, and no single factor should be held dispositive.  *Id*.  The U.S. Supreme Court, moreover, has recently held that a fee claimant need not be a prevailing party to be eligible for attorney's fees under ERISA.  *Hardt v. Reliance Standard Life Insurance Co.,* 130 S.Ct. 2149, 2152 (2010).  A court may award

---

[1] Interestingly enough, the "five factor" test adopted by most circuit courts for guidance in determining whether attorney's fees should be awarded in ERISA case was first formulated in 1978 by Judge Barrett in *Eaves v. Penn*, 587 F.2d 453, 465 (10th Cir.).

fees and costs under §1132(g)(1) as long as the fee claimant has achieved "some degree of success on the merits." *Id*.

4.    In the instant case, there can be do doubt that the Lee achieved "some degree of success on the merits."  This Court entered judgment on September 6, 2012 reversing LINA's decision to terminate Lee's long-term disability benefits, thus entitling Lee to all past benefits, at interest, wrongfully withheld by LINA.   The court also ordered full reinstatement of all future disability benefits to Lee for so long as he remains eligible.  The only issue upon which Lee did not prevail in this proceeding was his unsuccessful effort to admit extra record evidence of the implantation of his intrathecal morphine pump. Consideration of that evidence, however, was deemed unnecessary by the Court to a finding that LINA improperly terminated Lee's disability benefits.

5.    Because Lee achieved "some success" on the merits of his claim against LINA, obviously, it remains to consider the five *Gordon* factors to determine if Lee's motion for an award of fees should be granted.  The first such factor, the degree of the opposing parties' culpability or bad faith, clearly favors Lee.  In terminating his long-term benefits, the Court found that LINA improperly relied upon a functional capacity exam and a transferable skills analysis.  The Court further found that LINA ignored evidence of Lee's disabling pain in the administrative record, notably his lengthy course of treatment at Utah Pain Specialists, and refused to consider Lee's SSDI benefit award when benefits were terminated.  Finally, the court suggested that LINA was biased in its attitude toward Lee's physicians and in its refusal to conduct any first-hand evaluation of Lee's medical

condition by way of an independent medical examination.  All of these factors point to LINA's culpable conduct in unreasonably and incorrectly terminating his disability benefits, if not bad faith itself.

6.  Lee undoubtedly satisfies the second *Gordon* factor, *i.e*., a showing that LINA has the ability to personally satisfy an award of attorney's fees.  It is common knowledge, and the Court may take judicial notice, that LINA is one of the nation's largest underwriters of employee health plans.  According to information recently compiled by the Texas Department of Insurance, LINA has approximately 5.6 billion dollars of total assets and $869,906,261 in net surplus as of year end 2011.[2]

7.  The third *Gordon* factor asks whether an award of attorney's fees against LINA would deter others from acting under similar circumstances under the facts of this case.  Again, the answer is in the affirmative.  An award of fees to Lee would deter other insurers from relying upon ambiguous language to claim a right to deferential review when it would have been a simple task, in this instance, for LINA to expressly reserve discretion to terminate benefits.  An award of fees would deter other ERISA insurers from terminating disability benefits under the same or similar circumstances as LINA found fit to do so in this case.  See *McGee v. Equicor-Equitable HCA Corp*., 953 F.2d at 1209 (where other plan participants may benefit from the court's decision, other health plan providers might be deterred from denying benefits in similar circumstances).

---

[2] https://apps.tdi.state.tx.us/pcci/pcci_show_profile.jsp?tdiNum=48100

8.    The *fourth* Gordon factor asks whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA.   Lee clearly benefitted other participants in his particular benefit plan, as well as resolved significant legal questions under ERISA, in at least two respects.    First, Lee established that *de novo* review of claim denials and benefit terminations under the FMC employee benefit plan applies when juidicial review is soought.   There are undoubtedly other plan participants in Wyoming who are insured by LINA under similar plans with similar language that fall considerably short in creating deferential review.    The benefit of this ruling to other plan participants cannot be understated because the standard of review in ERISA cases all too frequently makes the difference between a plan participant receiving benefits and not.    Second, Lee established that pain based disabilities cannot be denied simply because the plan participant is unable to furnish medical exams and empirical tests showing the extent of his disability.    Especially is this true where the credibility of the plan participant is not at issue and there is ample non-medical evidence to establish that severe pain is itself disabling.    The ruling in Lee's favor will be of invaluable assistance to other plan participants who similarly claim disability based upon severe pain, along with the disabling effects of narcotic pain medication.    There is no doubt that this case resolved "significant" legal questions under ERISA.

9.    The final *Gordon* factor  -- the relative merits of the parties positions – is at least partly subsumed in the first factor, along with the requirement that Lee achieve

"some degree of success" on the merits of his claim against LINA.  As pointed out above, Lee prevailed upon every issue in this case other than his motion to admit extra-record evidence – and the court found that evidence unnecessary in determining that LINA's decision to terminate benefits was incorrect.  The "relative merits" factor of Lee's claim against LINA favors Lee because Lee won the case.

10.   Lee respectfully contends that he is entitled to an award of fees based upon his success in litigating the underlying case and his ability to satisfy each of the five *Gordon* factors.   Indeed, it is Lee's understanding that LINA does not dispute his entitlement to fees in this action, but rather objects to the amount of the award he requests.  In any event, since Lee has established that he is entitled to recover reasonable fees under 29 U.S.C. §1132(g)(1), it remains to determine that the amount of the fee award requested by Lee is reasonable.  The procedure for making this determination was outlined by the district court in *Thompson v. Union Sec. Ins. Co*., (Case No. 07-1062-EFM), Feb 2, 2011 (D. Kan.)[3] (hereinafter referred to as "Thompson") as follows:

> [I]n determining the fee award, the Court must arrive at a lodestar figure by multiplying the reasonable hours expended on the litigation by a reasonable hourly rate.  The fee applicant bears the burden of documenting the appropriate number of hours expensed and the hourly rates.  *Once this burden is met, the lodestar is presumed to be a reasonable fee.  The lodestar figure is then subject to an upward or downward adjustment based*

---

[3] The underlying ERISA case, in which the district court reversed an insurer's termination of long-term disability benefits under a *de novo* standard of review, is a reported decision. *Thompson v. Union Sec. Ins. Co*., 688 F.Supp. 1257 (D. Kan. 2010).  In the underlying case, the court noted that the issue of whether the plaintiff was entitled to an award of fees was not yet ripe.  *Id*. at 1281.  A subsequent, unreported decision was then entered in which fees in the amount of $255,678.45 were awarded to the plan participant.  It is very difficult to distinguish the Thompson case from the case at bar.

*upon the Johnson factors.*   Not all of these factors are relevant to every action, and more importantly, many are already" subsumed within the initial calculation of the lodestar."   The amount of the award, however, remains within the district court's discretion.

                * * *

In determining whether hours expensed are reasonable, the Court considers factors such as complexity of the case, the number of reasonable strategies pursued, the responses necessitated by the maneuvering of the other side, and potential duplication of services.   The Court is not required to "identify and justify each disallowed hour," nor is the Court required to "announce what hours are permitted for each legal task."   [Citations omitted] [Emphasis added].

11.    Attached hereto is Plaintiff's itemized billing statement.   The statement shows that the undersigned invested a total of 253.9 hours in this case over the course of 23 months (and as reflected by the undersigned's affidavit, that amount was pared by approximately 50 hours to ensure that the time reflected in the billing statement would be considered truly necessary to the case).   When multiplied by the undersigned's hourly rate of $275.00, Lee requests a total fee award of $69,822.50 in this action.

12.    There are no meaningful statistics that establish an hourly rate for ERISA specialists in Cheyenne, Wyoming.   There are, in fact, no other ERISA specialists in Cheyenne, at least to the undersigned's knowledge, and very few, if any, throughout the state of Wyoming.   If the court does not have before it evidence of prevailing market rates, it may in its discretion, "use other relevant factors, including its own knowledge, to establish the rate."   *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir, 2006).

13.    The undersigned has been practicing law for 35 years in Cheyenne, Wyoming, and over 20 of those years have been devoted largely to ERISA litigation.   In

2012, an hourly rate of $275.00 per hour is reasonable for an attorney with 35 years of experience who specializes in any area of the law in Cheyenne, Wyoming.

14.   LINA will undoubtedly contend that the hours for which fees are requested are excessive in this particular case.  A sizeable portion of the 253.9 total hours shown on the undersigned's billing statement was devoted to research and brief writing.  That is to be expected since the Court functions in an appellate capacity when an action under 29 U.S.C. §1132(aq)(1)(B) is commenced.   Approximately 100 hours were expended, in total, in researching and writing Lee's main appellate brief.  When compared to similar cases around the country involving the same or similar facts the same result, LINA is getting a huge bargain in this case.  In fact, the *Thompson* case, *supra*, is nearly identical to Lee's case.  In that action, the parties disputed the standard of review and the Court resolved that issue in favor of a *de novo* standard, just as the Court did in this case.  The court reversed the insurer's termination of long-term disability benefits upon briefs submitted by the parties, just as the Court did in this case.   There were additional discovery issues in *Thompson*, and the case took longer to reach a conclusion, for whatever reason.  Even so, the Honorable Eric Melgren, District Court Judge in Wichita, Kansas and a 2008 Bush appointee, awarded total fees to the plaintiff of $255,678.45, *supra* at 17.  The lead attorney in that case alone billed for 683.7 hours at $300 per hour. *Id*.  Other attorneys in the same firm billed an additional 300 hours.  *Id*.  The fees awarded in that case were nearly four times the fees Lee seeks in this action.

15.   It is also instructive to review the comments of the Court in this case as they relate to the 253.0 hours of research time and the 219.8 hours expended in briefing the case on summary judgment motions in the *Thompson* case.   As to the time billed for research, the Court held at p. 12:

> Thompson claims 253.0 hours for legal research on ERISA and other issues related to prosecuting this case.  Insurance Company objects to all but 42.1 hours, arguing that this research was excessive for basic ERISA issues.  As previously stated by this court, this was an atypical ERISA case, vigorously and in most instances, very contentiously litigated by the parties for nearly four years.  We do not find that the hours expended by Thompson on the issues raised during the course of this action unreasonable. Therefore the Court awards Thomson 253.00 hours for this category * * *.

16.   As for the 219.8 hours related to writing the plaintiff's summary judgment brief, the *Thompson* court held at p. 15:

> Thompson submits 219.8 hours related to summary judgment briefing as reasonable.  Insurance Company asserts that Thompson's submission is unreasonable and excessive, arguing that Thompson's briefing was unnecessarily lengthy.  Insurance Company suggests that 112.1 hours is reasonable.  The parties in this case have vigorously opposed nearly every issue raised, and as a result, the Court finds that a party choosing to expend additional time either researching a legal issue or drafting its arguments was not unreasonable.  The Court concludes, however, that the amount of time Thompson spent on these particular motions was excessive, and as a result, we will reduce his request by twenty percent [to 174.2 hours].

17.   The total fees sought by Lee in this action pales by comparison with *Thompson* and other comparable cases.  Lee is seeking compensation for approximately 100 hours of attorney time in the research and writing of his appellate brief, along with approximately 38 hours in researching and writing his briefs on standard of review.  He is also requesting an award of fees for approximately 31 hours in researching and writing

his 19-page appellate reply brief.   None of these hourly totals are excessive or unreasonable.   The plaintiff in the *Thompson* case was awarded fees for 253 hours of research time alone, along with another 174 hours for writing the summary judgment briefs in that action.   From reading the *Thompson* decisions, the work performed in that case was not qualitatively or quantitatively different than the work performed in Lee's case by the undersigned.

18.   In this Court's discretion, it is proper to subject the lodestar figure (reasonable hours times hourly fee) to an upward or downward adjustment based upon the "*Johnson*" factors.   See *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974).   They include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.   The "*Johnson*" factors are approved for use within the Tenth Circuit.   See *Homeward Bound, Inc. v. Hissom Memorial Center*, 963 F.2d 1352, 1356 (1992).

19.   Lee will not comment upon each and every one of the *Johnson* factors, especially when some are not particularly helpful in arriving at a reasonable fee determination or are otherwise subsumed in the lodestar test itself.   Lee will note,

however, that the issues involved in his case were difficult and novel.  Further, the undersigned respectfully asserts that more than usual skill was required to properly litigate this case.  The Court is able to observe and judge the experience, reputation, and ability of Lee's attorney for itself.  This case was not desirable to other attorneys (and Lee was unable to find another attorney who would take the case) because of the learning curve in ERISA cases and the fact that it did not involve a significant amount of money.  It should be noted in that regard, however, that the "reasonableness" of a fee award in an ERISA action does not incorporate any notion that the award be "proportional" to the damages awarded to the prevailing party.  See, e.g., *Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir. 1995) (adopting a rule that in ERISA cases, there is no requirement that the amount of an award of attorney's fees be proportional to the amount of the underlying award of damages).

20.   In conclusion,

Dated this 20th day of September, 2012.


Michael G. Lee, Plaintiff


BY: _____
Glenn E. Smith
Glenn E. Smith & Assoc.
216 Longs Peak Dr.
Cheyenne, WY 82009
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2012, I served a true and correct copy of the foregoing document to the following by CM/ECF addressed to:

Jack M. Englert, Jr.
jenglert@hollandhart.com


/s/ Glenn E. Smith_____